UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

DAVID PINTO QUINTERO,

    Petitioner,

v.

ALEJANDRA MARIA
DE LOERA BARBA,

    Respondent.

Civil Case No. 5:19-148

## MEMORANDUM OPINION

Michael Phelps makes swimming the Butterfly look easy. Fields Medal winners make fractional calculus look easy. And Jason Davis—formerly a Justice Department attorney and an equity partner at two national law firms—made this cross-border child abduction case look easy. Representing petitioner David Pinto Quintero, Davis—along with Jay Hulings (a former federal prosecutor, counsel to the U.S. House of Representative's Permanent Select Committee on Intelligence, Ninth Circuit clerk, and *Harvard Law Review* editor) and others at the law firm Davis Santos P.C.—guided the Court through this factual and procedural quagmire so deftly that the Court ordered respondent Alejandra Maria de Loera Barba to return Pinto's four children based on a straightforward application of the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, *reprinted in* 51 Fed. Reg. 10, 494 (Mar. 26, 1986), and its implementing legislation, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–9011 (ICARA).

ICARA requires "[a]ny court ordering the return of a child" to "order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal

fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3); *see also Salazar v. Maimon*, 750 F.3d 514, 520 (5th Cir. 2014) (noting "[o]nce [a] district court order[s] [a] child returned to [the petitioner], section 11607(b)(3) shift[s] the burden of proof onto [the respondent] to establish that an award of the requested necessary expenses would be 'clearly inappropriate'" (quoting § 9007(b)(3))). This mandatory fee-shift not only compensates a meritorious petitioner, but also "provide[s] 'an additional deterrent to wrongful international child removals and retention.'" *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 926 (W.D. Tex. 2012) (quoting H.R. Rep. No. 100-525, at 14 (1988)).

De Loera suggests three reasons why a fee order would be clearly inappropriate here, but none persuade the Court. *First*, she claims she "knows nothing else than to be a mom." Resp't's Resp. 13, ECF No. 75. But at the very least, the Court notes that de Loera is exceptionally well educated, graduating from Trinity University and an elite private high school in San Antonio. *See* 3/21/19 AM Tr. 12:21–13:3. *Second*, she contends she "does not have the financial means to pay," attaching a financial disclosure listing $8013 of charitable donations as her lone asset. Resp't's Resp. 13, ex. A. But that contradicts her in-court admission that she could access over $11,000 in child support payments, *see* 3/21/19 PM Tr. 29:12–30:23, and that she relies on her family for whatever financial support she needs, including buying a $350,000 home through a shell corporation, enrolling the four children in private school (an annual cost exceeding $60,000), and retaining American and Mexican lawyers.[1] *See, e.g.*, 3/21/19 PM Tr. at 32:22–

---

[1] Although that evidence alone is enough to disregard de Loera's financial disclosure, the Court notes that her prior false statements to the Court further diminish her credibility. *See, e.g.*, 3/19/19 Tr. 4:25–5:9.

2

33:2; *see also, e.g.*, 3/19/19 Tr. 128:1–129:7. *Third*, she argues she should not have to reimburse Pinto for enforcing the Mexican custody order since she claims her Mexican lawyer said she could take the children to the United States without violating that order. *See* Resp't's Resp. 14. But her Mexican lawyer swears he never said that. *See* 3/22/19 A.M. Tr. 62:6-24. Accordingly, de Loera fails to explain why a fee order is clearly inappropriate.

So the Court must calculate Pinto's necessary expenses. He accounts for $110,470.36 in out-of-pocket expenses, including travel expenses and temporary accommodations for two caretakers (one of whom was a relative) and for actual and potential witnesses; security and detective services, including during the months spent searching for his children; and fees incurred visiting the children at the court-approved supervised visitation facility. *See* Pet'r's Mot. ex. B, ECF No. 65-2. He further accounts for $22,541.62 in costs ranging from court clerk and reporter fees; hiring translators,[2] private investigators, and process servers; printing and copying; and renting the house where he and the children lived during the proceedings. *See* Pet'r's Mot. ex. A, ECF No. 65-1. Court costs, court reporter fees, printing and copying costs, and translator fees are "*per se* awardable," *see Saldivar*, 894 F. Supp. 2d at 943 (citing 28 U.S.C. § 1920), as are child "care during the course of proceedings . . . and transportation costs related to the return of the child[ren]." § 9007(b)(3). Moreover, de Loera never objects to any claimed cost beyond categorizing the total amount as "preposterous" and "outrageous," Resp't's Resp. 12, and relying on "attorney arguments attempting to set forth h[er] version of the underlying facts relating to the child[ren]'s retention." *Salazar*, 750 F.3d at 522. That falls short of her "statutory obligation to come forward with evidence to show the claimed fees were clearly inappropriate." *Id.* Indeed,

---

[2] The $22,541.62 figure includes $418 for a specialized interpreter the Court provided to translate technical terms related to Mexican law and the Mexican courts' orders. Though Pinto's opening motion originally called for de Loera to pay that amount directly to the Court, during the motion's pendency, Pinto's attorneys paid that amount themselves to avoid a lapse in the interpreter's compensation.

3

her opposition—just like one the Fifth Circuit rejected in *Salazar*—"contain[s] no exhibits, affidavits, or any evidence to dispute the necessity or propriety of the claimed expenses." *Id.* Nor did the Court's independent review find any expenses not reasonably necessary to Pinto's quest to get his children back. Pinto is entitled to $133,011.98 in costs and expenses.

That leaves Pinto's legal fees. "[T]he attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). Both sides agree the calculus begins with the lodestar approach: multiplying the total hours reasonably expended with a reasonable hourly rate. Hours contributing to a successful outcome are "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). To determine a reasonable rate, the Court considers the prevailing market rate in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). And both sides agree that in the Fifth Circuit, once the Court calculates the lodestar, it must then contemplate adjusting the figure upwards or downwards according to factors explained in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Those factors include "[t]he novelty and difficulty of the legal questions" (the lawyer "should be appropriately compensated for accepting the challenge"); "[t]he skill requisite to perform the legal service properly" (including the attorney's "work product, his preparation, and general ability before the court"); "[t]he preclusion of other employment by the attorney due to acceptance of the case"; "[t]he customary fee" (since "various types of legal work command differing scales of compensation"); "limitations imposed by . . . the circumstances" ("[p]riority work that delays the lawyer's other legal work is entitled to some premium"); "[t]he experience, reputation, and ability of the attorneys"; and "[a]wards in similar cases." *Id.* at 719.

Davis Santos attorneys and paralegals spent 617.8 hours securing their client's total relief. De Loera musters no more than "conclusory complaints" that this effort was excessive, even though the law demands "specific reasons, comparisons or established standards by which to measure the objection." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 n.84 (S.D. Tex. 2008). Confronted with seventeen pages of detailed billing records, de Loera merely retained an expert to conduct "a perfunctory review" and deem the amount of time "questionable, nay, extremely excessive." Decl. Gary Caswell ¶ 4, ECF No. 75-3. That rhetoric fails to undermine the firm's diligent work throughout this matter's two-month lifespan, beginning with discovery and persisting through numerous written motions, witness preparation sessions, and a four-day hearing.[3] Although the legal questions were neither novel nor difficult, the facts and procedural history were, and de Loera's successive motions rehashing already-rejected arguments—not to mention her family's attempt to thwart the proceeding through an emergency state court action—made matters worse. *See, e.g.*, ECF Nos. 10, 11, 12, 28, 34, 51, 64.

For these efforts, Davis Santos charges an approximate average hourly rate of $364. De Loera argues that's too much, citing a *Texas Bar Journal* article reporting $281 as the median statewide hourly rate in 2017. *See* Resp't's Resp. 10. But that's the wrong comparator, for four reasons. *First*, this litigation took place in 2019, not 2017. *Second*, the Court looks to "the prevailing rate . . . i[n] the community in which the district court sits"—here, San Antonio, the seventh most populous city in America with a correspondingly sophisticated legal market—not a statewide survey lumping urban and rural markets together. *Scham v. Dist. Courts Trying*

---

[3] The expert attaches an order from a different ICARA case in a different city awarding just $20,234 in fees, but that doesn't move the needle, either. He never compares that case's factual and procedural complexity, its litigiousness, or its attorneys' experience and credentials to this case.

5

*Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998).[4] *Third*, the *Texas Bar Journal* did not account for differences among firms. Davis Santos is an elite boutique firm offering services comparable to a large law firm. According to a 2015 survey by the Texas State Bar, large San Antonio law firms charge a $421 median hourly rate—above what Pinto's attorneys charged here. *See* Dep't of Research & Analysis, State Bar of Tex., *2015 Hourly Fact Sheet* 13 (2016), ECF No. 79-10. *Fourth*, the *Texas Bar Journal* did not account for differences among cases. But the Texas State Bar's 2015 survey did, finding the statewide median hourly rate for international law cases (like this one) was $385—above what Pinto's attorneys charged here. *Id.* at 6. And lacking any other argument from de Loera, the Court cannot find a $364 average hourly rate unreasonable. That's all the more true since other judges in this district have approved much higher hourly rates for less complicated cases involving less qualified lawyers. *See MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 15-60, 2018 WL 7890668, at *2 (W.D. Tex. Dec. 19, 2018) (approving a $755 hourly rate in a breach-of-contract case); *Xpel Techs. Corp. v. Carlas Int'l Auto. Accessory, Ltd.*, No. 16-1308, 2017 WL 9362801, at *9 (W.D. Tex. Nov. 27, 2017) (approving a $545 hourly rate for attorneys at a large law firm who obtained a default judgment in a trademark infringement case); *see also City of San Antonio v. Hotels.com, L.P.*, No. 6-381, 2017 WL 1382553, at *11 (W.D. Tex. Apr. 17, 2017) (awarding attorneys with twenty years experience $625 hourly, attorneys with ten to twenty years experience $475 hourly, and attorneys with five to nine years experience $350 hourly in a class action under the Texas Tax Code); *Sierra Club v. Energy Future Holdings Corp.*, No. 12-108, 2014 WL 12690022, at

---

[4] Although de Loera argues Pinto should have "provide[d] an affidavit or statement from a disinterested attorney attesting to the prevailing market rate in San Antonio for similar types of litigation by attorneys with similar experience," Resp't's Resp. 9, the Fifth Circuit imposes no such requirement. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

*6 (W.D. Tex. Aug. 29, 2014) (awarding out-of-district counsel in a Clean Air Act case $925 per hour after finding that rate reasonable given their home market).

And even if this hourly rate exceeded the market, the *Johnson* factors would adequately justify the increase. Although de Loera cites several ICARA cases awarding considerably lower fees, none compare to this case's factual or procedural complexity, de Loera's scorched-earth opposition, or the Davis Santos team's sterling credentials. *Cf., e.g., Salazar*, 750 F.3d at 517-18 (noting the district court awarded $39,079.13 in an ICARA case that settled without trial); *Saldivar*, 894 F. Supp. at 943 (reducing the lodestar amount by 55% to $8,617.50 since the respondent had recently been laid-off). This litigation's breakneck speed forced the Davis Santos team to quickly get up to speed in a challenging cross-border legal morass, which they navigated with one of the most sophisticated, well-prepared, professional, and effective presentations in the Court's recent memory. The pace, intensity, and specialized nature of the litigation imposed a great opportunity cost on Davis Santos, further justifying any upward adjustment.

So Pinto is entitled to $224,835 in legal fees. And he is further entitled to an additional $7,230 compensating his attorneys for the twenty-nine hours spent preparing his fee petition. *See Johnson v. State of Mississippi*, 606 F.2d 635, 637-38 (5th Cir. 1979). Combined with his other costs and expenses, the Court will award Pinto $365,076.98. A separate order follows.

August 6, 2019

                                                 Royce C. Lamberth
                                                 United States District Judge